**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NOLAN RAY GEORGE,

                  Petitioner,

                                    CASE NO. 2:15-CV-14057
v.                               HONORABLE ARTHUR J. TARNOW
                               UNITED STATES DISTRICT JUDGE

BONITA HOFFNER,

                  Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

    Nolan Ray George, ("petitioner"), confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for first-degree murder, M.C.L.A. 750.316. For the reasons that follow, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

### I. Background

    Petitioner was convicted by a jury in 2011 in the Oakland County Circuit Court for the killing of Gwendolyn Perry in Pontiac, Michigan in 1968.

    On December 8, 1968, police found the victim's body just off a two-rut lane in a heavily-weeded area in Pontiac, Michigan. (Tr. 4/25/11, pp. 196-98). The police noticed fresh car tracks in the snow which led through a fairly isolated area

near where the victim was discovered. (*Id.*, p. 206). Two nylon stockings were wrapped tightly around the victim's neck. (Tr. 4/26/11, pp. 104, 186-187).

Police recovered a Pabst Blue Ribbon Beer bottle in the area near where the victim's body was found. (Tr. 4/25/11, pp. 205, 209, Tr. 4/26/11, p. 209).

An autopsy was conducted on the victim. Sperm was recovered from the victim's vagina. The medical examiner discovered areas of hemorrhage and pin-point bleeding on the left side of the lower part of the neck. The pin-point bleeding was consistent with intermittent pressure being placed on the victim's neck, which would have been consistent with a struggle. (Tr. 4/26/11, pp. 105-07). The autopsy revealed that the victim suffered blunt force trauma to the side of her head which could have caused loss of consciousness. (*Id.*, pp. 111-14, 186). The cause of death was asphyxiation from the stockings that had been tied around the victim's neck after she had been beaten. (*Id.*, p. 115).

On March 16, 1969, just three months after Gwendolyn Perry's murder, police found the body of Frances Brown lying across the front seat of a Cadillac parked in a dark area in a parking lot across the street from a bar in Lake Orion, Michigan. (Tr. 4/25/11, pp. 215, 217). Ms. Brown was discovered about 7 ½ to 8 miles from where Gwendolyn Perry's body had been found. (Tr. 4/26/11, p. 225). The police discovered a Plymouth with the motor running parked next to the Cadillac. (Tr. 4/25/11, p. 236). Ms. Brown was discovered in almost the identical position and state of undress that Ms. Perry had been found. (Tr. 4/25/11, pp.

219, 221, 239, Tr. 4/26/11, p. 120). Police recovered a Pabst Blue Ribbon beer can in the back seat and a Pabst Blue Ribbon cap from a beer bottle wedged inside a crevasse in the vehicle. There were also beer cans outside the car. (*Id.*, pp. 223, 230).

An autopsy conducted on Ms. Brown revealed the presence of sperm. Ms. Brown had also suffered blunt force trauma to the head and had been strangled. As with Ms. Perry, the cause of death was asphyxiation from the underwear which had been wrapped tightly around Ms. Brown's neck after she had been beaten. (Tr. 4/26/11, pp. 121-26, 129-30). [1]

Petitioner was arrested for the murder of Ms. Brown and initially pleaded guilty to second-degree murder for the death of Frances Brown. (Tr. 4/25/11, pp. 227-28, Tr. 4/26/11, p. 147).

Petitioner's second-degree murder conviction in the Brown case was vacated in March, 1973, because the trial court failed to properly advise petitioner of the rights that he was giving up by pleading guilty. Petitioner was then tried and convicted by a jury for second-degree murder and was sentenced of 40 to 60 years in prison. The Michigan Court of Appeals reversed this conviction because the prosecutor introduced the transcript from petitioner's initial guilty plea. On

---

[1] Page 126 is missing from the transcript that was provided to the Court. However, petitioner's brief on appeal and the prosecutor's brief on appeal both indicate that the cause of death was strangulation and refer to page 126. (See Dkt. # 815, Pg ID 1618, 1653).

remand, petitioner again pleaded guilty to second-degree murder and received a sentence of 17-25 years in prison. See *People v. George*, 69 Mich. App. 403, 404, 245 N.W.2d 65, 66 (1976)(See also Tr. 4/25/11, pp. 23-26).

73-year-old Eugene Wais testified that he met petitioner in prison when they were incarcerated together in the 1960's or 1970's. (Tr. 4/25/11, pp. 253-54).[2] One night, petitioner told Wais and another inmate that he had killed up to seven women near a gravel pit in Pontiac, Michigan. Petitioner told his fellow inmates that he would drive down Woodward Avenue, pick them up in his car, and start choking them. Petitioner told the men that he put some of the victims in a gravel pit. Petitioner would become excited when he spoke about killing the women. Petitioner indicated that he liked to see the victims jump while he was choking them. (*Id.*, pp. 256-59, 265, 276).

Mr. Wais testified that the police asked him in the 1970's to testify against petitioner, but he refused to do so at the time because the agreement was not put in writing and it was dangerous for Mr. Wais to testify while he was still incarcerated. (Tr. 4/25/11, pp. 260-62). Within the last year Detective Hunt from the Pontiac Police Department spoke with him about petitioner and Mr. Wais disclosed what petitioner told him while in prison. Mr. Wais was promised nothing

---

[2] At trial, Mr. Wais was unavailable due to health reasons, because he was unable to respond vocally to questions. Mr. Wais' preliminary examination testimony was read into the record. (Tr. 4/20/11, pp. 6-7; Tr. 4/25/11, pp. 251-52).

for his testimony and indicated he felt bad about the women that petitioner had killed. (*Id.*, pp. 263-64, 287).

Alfred Kish testified that he met petitioner in Jackson prison in the early 1970's and spent about a year in the same cell block. (Tr. 4/26/11, pp. 150-53, 157). Petitioner informed Mr. Kish that he was in prison for killing a woman in Lake Orion. Petitioner also told Mr. Kish about another woman whom he had murdered in Pontiac. Petitioner told Mr. Kish that he had been inside of a beer store and a woman either walked into or had been in the store. Petitioner indicated that he had seen her before. Petitioner waited for her outside in his car and called her over. The woman got into petitioner's car. Petitioner told Mr. Kish that they were going to have sex and she took off her clothes. Instead of having sex, petitioner smashed the woman in the face with a beer bottle, beat her and killed her. Petitioner said he killed the woman by strangling her. Petitioner demonstrated what he had done by making a motion consistent with pulling a knot. (*Id.*, pp. 159-160). Mr. Kish said that many years went by before his brother encouraged him to report petitioner's admissions to the police. Mr. Kish eventually spoke to Detective Hunt from the Pontiac Police Department. Mr. Kish testified that he was offered nothing to come forward and was given no promises. (*Id.*, pp. 163-66).

Petitioner was released from prison on December 23, 1981. (Tr. 4/26/11, p. 148). In 1982, petitioner moved to Ohio, where he met Cindy Garland. On

October 18, 1982, petitioner was observed choking Ms. Garland inside of Florence Mason's house. During the argument, petitioner threatened to kill Garland. Ms. Mason yelled at petitioner to get off of Ms. Garland.(*Id.*, pp. 14-19, 49, 51).

Ms. Garland's body was found four days later in a wooded area east of Hamilton, Ohio off of a two-track lane. (Tr., 4/26/11, pp. 17-18, 41-45). Ms. Garland was found face-down and nude with some panties and shoes found in the area of the body. (*Id.*, p. 49). Petitioner's fingerprints, as well as Cindy Garland's, were found on Miller beer cans in the area of the field where it appeared that a vehicle had been parked and from where Cindy Garland's body was dragged to where it was discovered. (*Id.*, pp. 47-48, 60). Ms. Garland died from blunt force trauma to the head as well as hypothermia. Intact sperm was found in Ms. Garland. (*Id.*, pp. 56, 76-81). Petitioner was charged with Ms. Garland's death and found guilty of manslaughter. (*Id.*, pp. 59, 148).

On October 7, 1969 around 9:30 a.m. Detective Orville Johnston and Detective Chancy of the Pontiac Police Department went to interview petitioner at the sheriff's department, because he had just pled guilty to second-degree murder in Ms. Brown's death the day before. (Tr. 4/26/11, pp. 187-88). Petitioner and his wife were both there. Petitioner was advised of his *Miranda* rights and initially requested an attorney, Bob Sterling. Mr. Sterling came to the jail and spoke with petitioner. After speaking with petitioner, Mr. Sterling agreed that the

police could speak with petitioner. Petitioner at first denied any involvement in

Ms. Perry's murder and told the police he did not even know her. Petitioner,

however, agreed to undergo further questioning at the Pontiac Police Department

at 2:00 p.m. (*Id.*, pp. 189-91).

Petitioner was brought to the Pontiac Police Department that afternoon.

Petitioner again asked for an attorney. Detective Johnston again called Attorney

Sterling. Mr. Sterling informed the police he couldn't continue to represent

petitioner since he was his attorney for the Brown case only. Detective Johnston

informed petitioner that another attorney would have to be appointed for him.

Detective Johnston called the prosecutor's office to try to have an attorney

appointed for petitioner. Petitioner interrupted Detective Johnston's call and

asked to see photographs of Ms. Perry. Detective Johnston showed him

photographs of Gwendolyn Perry and petitioner said, "I knew her." Petitioner

admitted that "I was in her presence a couple of occasions when she was with

some guy that works at General Motors." Petitioner said that he didn't know her

by name. (*Id.*, pp. 191-93).

At that point, Detective Chancy and Detective Johnston told petitioner that

because he had pled guilty to Frances Brown's murder, he would not be charged

in the Perry case if he were responsible for her death. (*Id.*, p. 193). Petitioner

immediately, without any further questions or conversation, said, "I did it." (*Id.*, p.

194). Petitioner then proceeded to provide the detectives with the details of Ms.

Perry's murder, which were consistent with the evidence recovered from the crime scene, including an admission that he strangled the victim and hit her in the head with a beer bottle. (*Id.*, pp. 194-210).

Petitioner's conviction was affirmed on appeal. *People v. George*, No. 304299, 2012 WL 2913712 (Mich. Ct. App. Jul. 17, 2012); *lv. den.* 493 Mich. 938, 829 N.W.2d 597 (2013).

Petitioner filed with the trial court a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et seq.,* which was denied. *People v. George*, No. 10-234495-FC (Oakland Cty.Cir.Ct., July 29, 2014). The Michigan appellate courts denied petitioner leave to appeal. *People v. George,* No. 323904 (Mich.Ct.App. Dec. 11, 2014); *lv. den.* 498 Mich. 871; 868 N.W. 2d 902 (2015).

Petitioner filed his habeas petition on November 10, 2015. The Court initially granted respondent's motion for summary judgment on the ground that petitioner failed to comply with the statute of limitations contained in 28 U.S.C. § 2244(d)(1). *George v. Winn*, No. 2:15-CV-14057, 2016 WL 1182728 (E.D. Mich. Mar. 28, 2016). On February 27, 2017, this Court granted petitioner's motion to alter or to amend the judgment, finding that petitioner was entitled to equitable tolling of the limitations period because of his age, his lack of education, his illiteracy, his prison transfer, his resultant reliance on the assistance of prison paralegals, and erroneous advice given to him by one of the paralegals concerning the correct application of the statute of limitations. The Court ordered

respondent to file an answer addressing the merits of petitioner's claims. [3]

Petitioner has filed a reply.

Petitioner seeks habeas relief on the following grounds:

I. Petitioner is entitled to a writ of habeas corpus because the custodial statement that was used against him at trial was made to the police detectives involuntarily and given in response to a police officer's promise of immunity in violation of a petitioner's Fifth and Fourteenth Amendment rights.

II. Petitioner is entitled to a writ of habeas corpus because there was insufficient evidence to convict him of first-degree premeditated murder in violation of the petitioner's Sixth and Fourteenth Amendment rights.

III. The unreasonable delay in the arrest of the petitioner violated his Fifth, Sixth, and Fourteenth Amendment rights to due process, to a fair trial, to present a defense, and to confront witnesses and evidence against him causing substantial prejudice at trial; and trial counsel was constitutionally ineffective for failing to move to dismiss based on the unreasonable delay in arrest.

IV. The trial court denied petitioner's Fifth and Fourteenth Amendment rights to due process and a fair trial by allowing the prosecution to introduce similar acts evidence.

V. Petitioner was denied his Fourteenth Amendment right to effective assistance of appellate counsel where appellate counsel was ineffective for failing to raise grounds three and four above in the petitioner's appeal of right.

---

[3] Respondent in their answer again argues that the petition is untimely and that this Court erred in equitably tolling the limitations period. This Court believes that its ruling in granting the motion to alter or amend judgment was correct and declines to revisit that ruling.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as

10

'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III. Discussion

### A. Claim # 1. The involuntary confession claim.

Petitioner claims that his 1969 confession to the police should have been suppressed by the trial court. Petitioner argues that the statement was involuntary because he was induced into making the statement after the detectives promised him that he would not be prosecuted for the crime if he confessed.

The Michigan Court of Appeals rejected petitioner's claim:

The trial court did not err in determining that defendant's statement was voluntary, and thus, admissible. When police met with defendant on the afternoon of October 7, 1969, to discuss Perry's murder, defendant had already pleaded guilty to murdering Brown and was in police custody. It is not clear how long the entire interview lasted, but defendant admitted that he was responsible for killing Perry relatively early in the conversation. At the time of defendant's admission, a police officer was in the process of obtaining an attorney for defendant pursuant to defendant's request. Defendant asked to see pictures of Perry, and after looking at them, he admitted to knowing her. One of the officers then told defendant that he would not be prosecuted if he was responsible for Perry's death, presumably because defendant had already pleaded guilty to murdering Brown. At this point, defendant said, "I did it" and provided details of the killing.

At the time of his admission, it is clear that defendant was aware of his *Miranda* rights, as he had requested an attorney and an officer was in the process of locating one for him. Because he had already pleaded guilty to the murder of Brown and was awaiting sentencing in that

crime, his continued detention was not contingent on confessing to Perry's murder. There was also no promise of release or leniency in his sentencing if he confessed to killing Perry. Defendant was with two officers, who were wearing plain clothes, in a relatively large room with windows along the wall. Defendant was not shackled or handcuffed. Although the officers each had a firearm, their firearms were beneath their coats.

There is no evidence that defendant was hungry, sick, tired, or under the influence of alcohol or drugs on that afternoon. Nor is there any evidence that defendant was coerced or threatened. Although defendant claims he was illiterate, the entire interaction was verbal. Defendant was 26 years old at the time and it appeared that he understood all questions asked of him, as his responses were rational. Defendant also had experience in the criminal justice system, he had just pleaded guilty to second-degree murder in the Brown case.

From the circumstances surrounding his statement, any promise of leniency was not the cause of defendant's confession. There was no negotiation between the police officer and the defendant or any evidence of mutual assent between the police officer and the defendant regarding a reduction of sentence or a non-prosecution agreement. Defendant simply voluntarily stated that he recognized Perry from the photographs. One officer explained that he expected defendant to serve 40 to 60 years in prison for Brown's murder and that confessing to Perry's murder would have no impact on that sentence. In all likelihood, defendant also expected to serve a long term in prison (as he was likely told what his sentence would be when he pleaded), so it is not clear what benefit defendant thought he would obtain from confessing. His immediate response, "I did it," when asked if he was responsible for Perry's death, supports the conclusion that any inducement by police was not a significant factor in his confession. As the prosecution points out, the testimony from former fellow prison inmates indicates that defendant had a fondness for talking about killing women. All of these factors indicate that defendant's statements were voluntary, and possibly made because defendant liked talking about his crimes. Interestingly enough, until the instant matter, there is no evidence in the record that the defendant did anything to memorialize or follow-up on the police officer's statement.

*People v. George*, 2012 WL 2913712, at * 4 (internal footnote omitted).

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Ledbetter v. Edwards,* 35 F. 3d 1062, 1067 (6th Cir. 1994)(citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)). An involuntary confession may result from psychological, no less than physical, coercion or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991); *Miranda v. Arizona*, 384 U.S. 436, 448 (1966).

When determining whether a confession is voluntary, the pertinent question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at 112. These circumstances include:

1. police coercion (a "crucial element");
2.  the length of interrogation;
3. the location of interrogation;
4. the continuity of the interrogation;
5. the suspect's maturity;

6. the suspect's education;

7. the suspect's physical condition and mental health;

8. and whether the suspect was advised of his or her *Miranda* Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in a defendant making a statement to the police should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, a confession should not be deemed involuntary in the absence of coercive police activity. *Colorado v. Connelly,* 479 U.S. 157, 167 (1986).

A confession, in order to be deemed voluntary, cannot be the result of any direct or implied promises, however slight. *See Shotwell Mfg. Co. v. U.S.,* 371 U.S. 341, 347 (1963). Police promises of leniency and threats of prosecution can be objectively coercive, as required for a finding that a confession was involuntary due to police coercion. *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003). However, contrary to petitioner's argument, courts have applied a totality of circumstances test in determining whether a police officer's promises of leniency made the defendant's confession involuntary. *See Holland v. Rivard*, 800 F.3d 224, 241-42 (6th Cir. 2015); *Loza v. Mitchell*, 766 F.3d 466, 478-80 (6th Cir. 2014); *Simpson v. Jackson*, 615 F.3d 421, 433–34 (6th Cir. 2010), *judgment vacated sub nom. Sheets v. Simpson on other grds*, 565 U.S. 1232 (2012).

The Michigan Court of Appeals reasonably determined from the totality of the circumstances that petitioner's statements were voluntary and admissible.

First, petitioner's first statement to the police, in which he asked to see Ms. Perry's photograph and then admitted to knowing her, was made before the detectives had made any promises to him. Because the detectives made any promise to petitioner after he admitted to knowing Ms. Perry, it could not have been coercive with respect to this admission, because petitioner's decision to make this portion of his statement could not have been dependent on the promise. *See U.S. v. Craft,* 495 F. 3d 259, 264 (6th Cir. 2007)*; See also Beach v. Moore,* 343 F. App'x. 7, 14 (6th Cir. 2009).

Secondly, the Michigan Court of Appeals reasonably concluded that under the totality of circumstances, petitioner's confession to murdering the victim was voluntary even though it was made after the police promised that he would not be prosecuted for this crime. There is no indication that petitioner was hungry, sick, tired, or under the influence of alcohol or drugs. Petitioner does not allege that he was threatened or intimidated by the police. Petitioner was advised of his *Miranda* rights. Petitioner had already asked to see the victim's photograph and had voluntarily admitted to knowing her prior to the promise. When the police indicated that petitioner would not be prosecuted for this offense, he immediately confessed to the murder. Under the circumstances, it was reasonable to conclude that the confession was voluntary. *See e.g. United*

*States v. LeBrun*, 363 F.3d 715, 724-26 (8th Cir. 2004)(confession was not compelled, even though officers used psychological pressure to facilitate a confession and defendant viewed their statements as a promise he would not be prosecuted, where defendant confessed after only 33 minutes of questioning, officers were not armed and never shouted at defendant or physically threatened him, defendant had a subjective understanding of his *Miranda* rights, and he was an educated individual with legal training).

Moreover, assuming that petitioner's confession to the police should have been suppressed, petitioner is unable to establish that he is entitled to habeas relief in light of the fact that admission of the statements against him at trial was harmless error at most. The Michigan Court of Appeals, in rejecting petitioner's claim, found in the alternative that admission of his confession was harmless error:

> The evidence against defendant was overwhelming. The similar bad acts evidence of the Brown and Garland killings established that defendant acted with specific intent to kill, premeditation, and deliberation. This evidence also established defendant's common plan of driving women to isolated areas, drinking beer and having sex with them, severely beating them, primarily on the head, and then in some cases, strangling the women with their own undergarments. In addition, the similar acts evidence demonstrated defendant's identity as Perry's murderer; Perry's murder was significantly similar to the killings of Garland and especially Brown. The similar acts evidence, along with the testimony of two former inmates who knew defendant in prison, also evidenced defendant's motive for killing Perry. Defendant enjoyed watching women struggle as he strangled them. Therefore, even if defendant's confession was involuntary and

inadmissible, the admission of this statement at trial was harmless error that does not require reversal and a new trial.

*People v. George*, 2012 WL 2913712, at * 5.

Harmless-error analysis applies to coerced or involuntary confessions. *Arizona v. Fulminante*, 499 U.S. at 295. In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. In light of the overwhelming evidence of guilt, the admission of petitioner's confession did not have a substanstial or injurious influence or effect on the verdict. Petitioner is not entitled to relief on his claim.

**B.  Claim # 2.  The insufficiency of evidence claim.**

Petitioner argues that there was insufficient evidence of premeditation or deliberation to sustain his first-degree murder conviction.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

The Michigan Court of Appeals rejected petitioner's claim:

There was ample evidence presented at trial from which a reasonable juror could conclude that defendant intentionally killed Perry with premeditation and deliberation. The evidence showed that defendant had sexual intercourse with Perry, beat her several times in the head, and then strangled her with her own pantyhose. These actions would have required time, giving defendant the chance to "take a second look" at what he was doing before he actually killed Perry. In addition, ligature strangulation is not an instant death. It takes 7 to 10 seconds for an individual to lose consciousness by strangulation when pressure is consistently and directly applied. One to two minutes of direct and consistent strangulation are required to cause death. In this case, the pinpoint bleeds on Perry's neck indicated that force was applied, released, and then reapplied. Because the force was not consistent, the time frame for Perry to lose consciousness and then die from asphyxiation would have been even longer. Furthermore, defendant did not strangle Perry with his hands. It appears that he used the pantyhose that Perry had been wearing, which would have required more time and effort. First, defendant had to acquire the pantyhose (by taking them off, or if they were already removed, by retrieving them). Defendant then wound the pantyhose tightly around Perry's neck and knotted the hose multiple times. These actions also indicate a plan, further evidencing that defendant acted with premeditation and deliberation. Not only do the circumstances of Perry's death indicate that defendant had the requisite specific intent to kill Perry, the

evidence also shows that defendant intended to make Perry suffer and prolong her death.

Defendant also had a motive and common plan for killing women in the same manner as Perry, which also shows he acted with premeditation and deliberation. Defendant enjoyed strangling women because he liked to watch them kick and struggle. Two of defendant's former fellow inmates testified that defendant told them he liked to strangle women and watch them struggle, and he had done it multiple times before. The injuries sustained by Perry and Brown are consistent with this testimony. The pinpoint bleeds on Perry's neck indicate the application, release, and reapplication of pressure. Brown had even more pinpoint bleeds, on her neck, face, and eyes, indicating that she struggled more or took longer to die, possibly because defendant was intentionally prolonging her death because he enjoyed watching her struggle. Furthermore, defendant killed Brown in almost the same fashion as he killed Perry. Defendant inflicted significant blunt force trauma to Brown's head, strangled with her own underwear, and then left her body in a car in the back corner of a bar parking lot. Defendant also beat Garland on the head repeatedly before leaving her naked in a field to die from hypothermia. All of these women were left partly undressed and all recently had intercourse. The similar nature of these deaths indicates that defendant had a common plan or scheme, which is further evidence that he specifically intended to kill Perry and acted with the requisite premeditation and deliberation for a conviction of first-degree murder.

*People v. George*, 2012 WL 2913712, at * 5–6 (internal citations omitted).

In order to obtain a conviction for first-degree murder in Michigan, the prosecutor must prove that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer*, 159 F.

Supp. 2d 582, 596 (E.D. Mich. 2001)(*citing People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)).  Premeditation may be proven through evidence of the following factors:

> 1. the prior relationship of the parties;
> 2. the defendant's actions before the killing;
> 3. the circumstances of the killing itself;
> 4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer*, 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones*, 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)(*quoting People v. Vail*, 393 Mich. 460, 469; 227 N.W.2d 535 (1975)).  "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003).  "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson*, 159 F. Supp. 2d at 596 (*quoting People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)).  Premeditation and deliberation may be inferred from the type

of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993). Premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F. 3d 370, 389 (6th Cir. 1998).

There was sufficient evidence of premeditation and deliberation to support petitioner's conviction. Petitioner admitted to Mr. Kish and to Detective Johnston that he hit the victim in the face with a beer bottle. A jury could infer premeditation from petitioner's act of striking the victim in the head with a heavy object with sufficient force to cause the victim's death. *See Ware v. Harry,* 636 F. Supp. 2d 574, 596 (E.D. Mich. 2008). There was also evidence that petitioner strangled the victim. Manual strangulation can be evidence that a defendant had an opportunity to take a "second look," so as to support a finding of premeditation. *See People v. Gonzalez*, 468 Mich. 636, 641, 664 N.W.2d 159 (2003). The fact that petitioner both beat the victim and then strangled her could support a finding of premeditation, because it would show that petitioner had opportunity in between each method of assault to reflect upon his actions. *See People v. Kelly,* 231 Mich.App. 627, 642; 588 N.W.2d 480 (1998).

**C. Claims # 3 and # 5. The pre-charging delay/ineffective assistance of trial and appellate counsel claims.**

Petitioner alleges in his third claim that his due process rights were violated because of the over forty year delay between the time that the police

completed their investigation and his actual arrest on these charges. Petitioner also claims that trial counsel was ineffective for failing to challenge the pre-charging delay. In his related fifth claim, petitioner argues that appellate counsel was ineffective for failing to raise this claim on his appeal of right.

Respondent contends that petitioner's third claim is procedurally defaulted, because he raised it for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

Petitioner claims that his appellate counsel was ineffective for failing to raise his third claim in his appeal of right. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). Additionally, petitioner could not have procedurally defaulted his related ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).

Petitioner has neither alleged nor established a violation of his Sixth Amendment right to a speedy trial, because his allegations only involve a delay

in being arrested and not a claim that there was a delay in bringing him to trial.

The Supreme Court has noted that it is "[e]ither a formal indictment or

information or else the actual restraints imposed by arrest and holding to answer

a criminal charge that engage the particular protections of the speedy trial

provision of the Sixth Amendment." *United States v. Marion,* 404 U.S. 307, 320

(1971). Therefore, although the invocation of the Speedy Trial Clause of the

Sixth Amendment need not await indictment, information or other formal charge,

the provision of the Speedy Trial Clause does not apply to the period prior to

arrest. *Id.*

The Due Process Clause, however, provides a limited role in protecting

criminal defendants against "oppressive" pre-arrest or pre-indictment delay.

*United States v. Lovasco,* 431 U.S. 783, 789 (1977). Proof of prejudice is

generally a necessary but not sufficient element of a due process claim involving

pre-indictment delay, and the due process inquiry must consider the reasons for

the delay as well as prejudice to the accused. *Id.* at 790.

The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for

pre-indictment delay is warranted only when the defendant shows: (1)

substantial prejudice to his or her right to a fair trial; and (2) that the delay was

an intentional device by the government to gain a tactical advantage. *United*

*States v. Brown*, 959 F. 2d 63, 66 (6th Cir. 1992). The Sixth Circuit has

repeatedly held that where the pre-indictment delay is caused merely by

negligence on the part of prosecutors or police, no due process violation exists. *United States v. Rogers,* 118 F. 3d 466, 476 (6th Cir. 1997)(rejecting the argument that "reckless or negligent disregard of a potentially prejudicial circumstance violates the Fifth Amendment guarantee of due process"); *United States v. Banks*, 27 F. App'x. 354, 357 (6th Cir. 2001)("Our Circuit has recognized that where delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process violation exists."). Finally, where a habeas petitioner fails to show that the prosecutor delayed the prosecution for illegitimate reasons, it is unnecessary for a court to determine whether the petitioner satisfies the "substantial prejudice" requirement. *Wolfe v. Bock,* 253 F. App'x. 526, 532 (6th Cir. 2007)(no due process deprivation of right to fair trial when petitioner failed to establish that 15-year delay between murder and his arrest was for illegitimate reasons). A defendant who seeks dismissal of criminal charges based on pre-charging or pre-indictment delay has the burden of demonstrating that the delay between the crime and the indictment was an intentional device on the part of the prosecution to gain a decided tactical advantage in its case. *United States v. Schaffer,* 586 F. 3d 414, 425-26 (6th Cir. 2009).

The trial judge denied petitioner's claim in part because he did not show that the prosecutor intentionally delayed prosecution to gain a tactical

advantage. *See People v. George*, No. 10-234495-FC, * 12-14 (Oakland

Cty.Cir.Ct., July 29, 2014).

Petitioner is not entitled to habeas relief on his pre-arrest delay claim,

because he failed to establish that the prosecutor intentionally delayed filing

charges here to gain a tactical advantage, rather than for valid reasons.

Although petitioner seems to argue that an improper intent can be inferred

because the police allegedly had all of the evidence they needed to prosecute

him in 1969, this would at best support an inference of negligence or

recklessness, which is insufficient to show improper intent on the part of law

enforcement. *See Parker v. Burt*, 595 F. App'x. 595, 601 (6th Cir. 2015). The

conclusion of the state trial court on post-conviction review that petitioner failed

to show that the state's delay in charging him was an intentional device to gain a

tactical advantage was thus reasonable. *Id.*

To the extent that the prosecutor delayed prosecuting this case because

they desired to obtain additional evidence, petitioner would be unable to

establish that the delay was improper. The Supreme Court in *Lovasco*

recognized "that the interests of the suspect and society are better served if,

absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed

sufficient time to weigh and sift evidence to ensure an indictment is

well-founded." *United States v. Eight Thousand, Eight Hundred and Fifty Dollars*

*($ 8,850) in U.S. Currency,* 461 U.S. 555, 563 (1982). To prosecute a defendant

following an investigative delay does not deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco*, 431 U.S. at 796.

Although petitioner confessed to murdering Ms. Perry in 1969, the police had no additional evidence linking him to the crime until many years later when both Mr. Kish and Mr. Wais came forward with additional evidence against petitioner.  A trial court is not permitted under the Due Process Clause to terminate a criminal prosecution simply because it disagrees with the prosecutors' decisions as to when to seek an indictment. *Lovasco*, 431 U.S. at 790.  Prosecutors are under no duty to file charges before they are satisfied that they will be able to establish the defendant's guilt beyond a reasonable doubt. *Id.*

In addition, the prosecution's decision to forego charging petitioner in 1969 because he was already serving a lengthy prison sentence on another second-degree murder charge was a valid reason for any pre-charging delay. *See e.g. Arnold v. McCarthy*, 566 F. 2d 1377, 1385 (9th Cir. 1978).

Petitioner has failed to show that the prosecutor delayed the prosecution for invalid reasons, it is thus unnecessary for this Court to determine whether petitioner can establish that he was substantially prejudiced by the delay. *Wolfe,* 253 F. App'x. at 532.

Nonetheless, petitioner is unable to establish that he was prejudiced by the delay in prosecuting his case.  The Sixth Circuit has observed that: "[T]he

standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." *Rogers,* 118 F. 3d at 477, n. 10.

Petitioner claims that because of the passage of time, several witnesses could not be located, and/or the memories of these witnesses have diminished with time. Petitioner argues that certain unspecified witnesses could have been called to impeach the credibility of Mr. Kish and Mr. Wais. However, "a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish actual prejudice from a pre-charge delay." *Randle v. Jackson,* 544 F. Supp. 2d 619, 631 (E.D. Mich. 2008)(citing *United States v. Beszborn,* 21 F. 3d 62, 67 (5th Cir. 1994); *United States v. Mask,* 154 F. Supp. 2d 1344, 1348 (W.D. Tenn. 2001)). Petitioner failed to present any affidavits from any of these witnesses in support of his claim. The trial judge rejected the claim on post-conviction review because it was too speculative. *People v. George*, No. 10-234495-FC, * 12.

Petitioner also claims that he was prejudiced by the pre-charging delay because several witnesses died because of the passage of time. The death of a potential witness during a pre-charging period may be sufficient to demonstrate the requisite prejudice to support a claim that a pre-charging delay violated due process, but only if the defendant can demonstrate that exculpatory evidence was lost and could not be obtained through other means. *United States v. Rogers*, 118 F.3d at 475. However, a defendant cannot show actual prejudice

27

based on the death of a potential witness if the defendant gives no indication of what the witness's testimony would have been and whether the substance of testimony was otherwise available. *Id.*

Petitioner is unable to show that he was prejudiced by the delay in prosecuting him. As the trial judge noted in rejecting petitioner's claim on post-conviction review, several of the police officers and one of the investigating detectives from the case were still alive and testified at petitioner's trial. Photographs from the crime scene were introduced at the trial. Although the medical examiner who performed the autopsy was no longer alive, the autopsy report and protocol was introduced at trial through the testimony of the current medical examiner. Petitioner does not argue or show that there were any problems with the original autopsy. Petitioner's confession was admitted through the testimony of Detective Johnston. Several witnesses from petitioner's two other homicide cases testified at trial. Although several police officers from the case are now deceased, petitioner only speculated that they would have offered exculpatory evidence. *People v. George*, No. 10-234495-FC, * 9-11.

Finally, petitioner confessed to murdering the victim. In light of the fact that petitioner admitted his involvement in this crime, petitioner has failed to show that he was substantially prejudiced by the delay in prosecution. *See U.S. v. Bartlett,* 794 F. 2d 1285, 1292-93 (8th Cir. 1986).

28

Petitioner argues further that trial counsel was ineffective for failing to file a motion to dismiss the charges based on pre-charging delay. Petitioner further alleges in his fifth claim that appellate counsel was ineffective for failing to raise the pre-charging delay and related ineffective assistance of trial counsel claim on his appeal of right.

A criminal defendant must satisfy a two prong test to establish the denial of the effective assistance of counsel. First, the defendant must show, considering all of the circumstances, that his or her attorney's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner did not establish that the police or prosecutor intentionally delayed charging him in order to gain a tactical advantage over his case, thus, trial counsel was not ineffective for failing to challenge the pre-charging delay. *See Lenoir v. Warden, S. Ohio Corr. Facility*, 886 F. Supp. 2d 718, 735 (S.D. Ohio 2012).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). Petitioner's third claim would not entitle him to relief. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Appellate counsel was not ineffective in the handling of petitioner's direct appeal. Petitioner is not entitled to habeas relief on his third and fifth claims.

**D. Claim # 4. The similar acts evidence claim.**

Petitioner next contends that the trial court improperly admitted "similar acts" evidence when the prosecutor introduced evidence that petitioner had killed two other women.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United

States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner is not entitled to relief on his claim.

### E. A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v.*

31

*McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason would find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85. Any doubt regarding whether to grant a COA from the denial of a petition for federal habeas relief is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F. 3d 250, 253 (5th Cir. 2004). Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the nonparolable life sentence that he is serving. The Court thus issues petitioner a COA. Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would be in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

### IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner George is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of

appealability and leave to proceed on appeal *in forma pauperis*.


                                    S/Arthur J. Tarnow_____
                                    Arthur J. Tarnow
Dated:  April 11, 2018              United States District Judge


I hereby certify that a copy of the foregoing document was served upon parties/counsel of
record on April 11, 2018, by electronic and/or ordinary mail.

                                    S/Catherine A. Pickles_____
                                    Judicial Assistant